Allan Y.K. WONG, Trustee of Island Realty Trust, Plaintiff, Appellant,

v.

William H. SMITH and Aline J. Smith, Defendants, Appellees.

No. 91–2157.

United States Court of Appeals, First Circuit.

Heard April 3, 1992.

Decided April 24, 1992.

Ray Aaionian, on brief for plaintiff, appellant.

Janet Macnab, on brief for defendants, appellees.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and SELYA, Circuit Judge.

PER CURIAM.

Allan Y.K. Wong, as trustee of the Island Realty Trust, bought an apartment house in Sanford, Maine from William and Aline Smith. The Smiths represented to Wong that the walls of the house were insulated with fiberglass. After the sale, Wong discovered that the walls also contained urea formaldehyde insulation, which has been linked to certain health problems.

In March 1987, Wong sued the Smiths in a Maine Superior Court. Though the complaint was brief and did not expressly identify the legal theory upon which Wong sought recovery, the parties and the Superior Court read the complaint to state a claim for fraud.

The Smiths moved for summary judgment in October 1987. In January 1988, a week before the Superior Court ruled on the motion for summary judgment, Wong moved to amend his complaint to add two new counts for breach of contract and breach of warranty.

On February 2, 1988, the superior court (1) granted Wong's motion to amend (which meant that the court now had before it a three-count complaint alleging fraud, breach of contract and breach of warranty), and (2) granted the Smiths summary judgment on the "fraud count." The breach of contract and breach of warranty counts remained, and in May 1988 the Smiths moved for summary judgment on them. In October 1988, however, before the Superior Court could rule on the second motion for summary judgment, Wong voluntarily dismissed the case. At the time, Maine R.Civ.P. 41(a) allowed plaintiffs to dismiss unilaterally, and without prejudice, "at any time before commencement of trial." As far as the record on appeal shows, the state court lawsuit ended with the filing of the notice of dismissal.

In January 1991, Wong sued the Smiths in the United States District Court for the District of Massachusetts. Relying on diversity of citizenship for jurisdiction, Wong again alleged that he had been injured by the Smiths' failure to tell him about the presence of urea formaldehyde insulation in the walls of the apartment house. The federal complaint asserted claims against the Smiths for breach of contract, misrepresentation and fraudulent concealment.

The Smiths moved for summary judgment, contending that res judicata barred the federal suit. Wong opposed the motion, and also moved to amend the complaint to add a count for breach of warranty. The district court granted the motion to amend, then dismissed the action "on the grounds of res judicata." This appeal followed. We affirm.

■ "In applying *res judicata*, 'a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.'" *Crane v. Commissioner of Department of Agriculture, Food and Rural Resources*, 602 F.Supp. 280, 285 (D.Me. 1985) (quoting *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). Under Maine law, a court can apply the doctrine of res judicata (which we will refer to, for clarity's sake, as "claim preclusion") if it is satisfied that (1) the same parties, or their privies, are involved in both actions, (2) a "valid final judgment" was entered in the first action, and (3) "the matters presented for decision were, or might have been, litigated in the prior action." *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me.1982) (quoting *Kradoska v. Kipp*, 397 A.2d 562, 565 (Me.1979)).

■ The first and third elements are not debatable here. The parties are exactly the same in both cases. Whether or not all of the matters presented for decision in the federal case actually were litigated in the state court, it is clear that all of Wong's federal counts "might have been" litigated there. Because the state and federal complaints alleged exactly the same wrong (the failure to disclose the presence of urea formaldehyde) and asked for essentially the same relief (damages to compensate

the wrong), they both asserted the same "cause of action," a term defined by Maine law to mean "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Kradoska v. Kipp*, 397 A.2d at 568.

■ The controlling question here is whether the disposition of the state court action satisfied the requirement of a "valid final judgment." "The application of res judicata ... requires as a predicate a valid final judgment in the prior action." *S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, 408 A.2d 676, 679 (Me.1979). The Superior Court docket is not in the record on appeal, but it does not appear that the state court ever had the opportunity to issue or enter a formal, "final" judgment.

The Superior Court gave the Smiths a *judgment* on the fraud count, but that judgment was not "final" when rendered because it did not completely "dispose[ ] of the action and leave[ ] no further question for consideration by the court." *Crane v. Commissioner*, 602 F.Supp. at 288 (citing *Martel v. Inhabitants of the Town of Old Orchard Beach*, 404 A.2d 994, 995 (Me. 1979)). Rather, the grant of summary judgment left the newly-added breach of contract and breach of warranty counts open for adjudication. *See Bacon v. Penney*, 418 A.2d 1136, 1140 and n. 4 (Me.1980) (grant of "partial summary judgment" was interlocutory, not appealable, and had no res judicata effect).

■ Had the breach counts been litigated to a conclusion, of course, the Superior Court would have entered a "final" judgment that disposed of both the breach and the fraud counts. But the Superior Court action ended with Wong's voluntary dismissal. Under Maine law, a voluntary dismissal is without prejudice, and not "final" for purposes of the claim preclusion doctrine, unless the plaintiff "has once dismissed in any court of this state or any other state of the United States an action based on or including the same claim." Maine R.Civ.P. 41(a). *See generally* Field, McKusick and Wroth, *Maine Civil Practice* § 41.2 (explaining "two-dismissal" rule). *See also Hayden v. Maine Central R.R. Co.*, 118

Me. 442, 108 A. 681 (1920); *Holman v. Lewis*, 107 Me. 28, 31–32, 76 A. 956 (1910) (voluntary nonsuit is not a bar to subsequent suit because "nonsuit is not equivalent to a judgment for the defendant").

Notwithstanding the apparent absence of a technically "final" judgment, we rule that Wong's fraud claim was adjudicated with sufficient finality in the Superior Court to give the grant of summary judgment on the fraud count preclusive effect. Although the Maine courts have not decided this issue, *see Mearl Corp. v. State Tax Assessor*, 482 A.2d 1258, 1261 (Me.1984) (declining to reach issue), courts in other jurisdictions with similar rules regarding the availability of voluntary dismissals have decided that a plaintiff may not resort to voluntary dismissal or nonsuit once the court has granted summary judgment to the defendant, or announced its intention to do so. *See, e.g., Garrison v. Cook*, 280 Or. 205, 570 P.2d 646, 649 (1977) (statute allowed plaintiff to take nonsuit up to five days before trial, but voluntary nonsuit not available following adverse summary judgment); *Smith v. Hartford Fire Ins. Co.*, 162 Ga.App. 26, 289 S.E.2d 520, 522 (1982) (statute allowed plaintiff to dismiss voluntarily prior to verdict, but announcement of intention to grant summary judgment precluded filing of voluntary dismissal, even though plaintiff filed notice of dismissal before judgment was actually entered). This is sensible policy. "The summary judgment procedure, at least from the defendant's viewpoint, would become a virtual nullity if a plaintiff can 'exit stage left' upon hearing an adverse oral decision ... on the summary judgment motion." *Beritich v. Starlet Corp.*, 69 Wash.2d 454, 418 P.2d 762, 764 (1966).

If that is so, then it makes little difference whether the Superior Court action ended with the bang of a "final" judgment or the whimper of a voluntary dismissal. With respect to the fraud count, the notice of voluntary dismissal could have "had no significance other than to evidence acquiescence in the ruling." *Warren v. Lawler*, 343 F.2d 351, 357 (9th Cir.1965). That is to say, by dismissing the remains of his state

court action, Wong did no more than acknowledge the adverse decision on his fraud count and give notice that he did not intend to contest it any further. The summary judgment on the fraud count, though interlocutory when rendered, became final in fact if not in form when Wong abandoned his state court case.

 And, if *that* is so, then applying the claim preclusion doctrine becomes an unremarkable exercise that leads to a fair result. Wong fully litigated his fraud theory in the Superior Court. He could and should have litigated to a conclusion there all of the legal theories he thought supported recovery on his single cause of action. Instead, he attempted to bite the apple twice by "splitting" his claim—litigating different manifestations of the same cause of action in two different courts.

The technical absence of a "final" judgment in the Superior Court, moreover, was due entirely to the peculiar nature of Wong's claim-splitting exertions. Had he not belatedly placed the breach theories before the Superior Court, that court would have rendered a "final" judgment on the fraud claim alone; had he not prematurely whisked the breach theories off its docket, the Superior Court would have "finally" adjudicated all of the counts together. It would be anomalous for a court to refuse to apply the claim preclusion doctrine precisely *because* the plaintiff has done what the doctrine is intended to deter. *See Department of Human Services v. Lowatchie*, 569 A.2d 197, 199–200 (Me.1990) (res judicata an indication of "natural aversion of the court to protracted litigation and multiplicity of action," and of policy that neither public nor parties should have to bear burden and expense of two lawsuits where only one is necessary).

*Affirmed.*